Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Michael D. Murphy
Christopher J. Bridger
Assistant United States Attorneys
402 E. Yakima Avenue, Suite 210
Yakima, Washington 98901
(509) 454-4425

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | 1:22-CR-02041-SAB-2 |
|---|---|
| Plaintiff, | PLAINTIFF'S SENTENCING |
| vs. | MEMORANDUM |
| PAULA EULOJIA CANTU-LOPEZ, | |
| Defendant. | |

The United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Michael D. Murphy and Christopher J. Bridger, Assistant United States Attorneys, submit the following Sentencing Memorandum.

In the instant case, Defendant Paula Eulojia Cantu-Lopez was convicted following a jury trial concluded on August 11, 2023 of Count 1, Carjacking, in

GOV'T SENT. MEMO.                           1

violation of 18 U.S.C. §§ 2119, 2, Count 3, Brandishing a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A), and Count 6, Assault Resulting in Serious Bodily Injury, in violation of 18 U.S.C. § 113(a)(6), 112. ECF 108, Draft PSIR, ¶ 5, ECF 104, Verdict Form. Her boyfriend and long-term partner, Sundron Larsell Miller, was convicted in the same trial of similar charges. *See* ECF 104.

I. Base Offense Level and Enhancements

The draft PSIR provides for a total offense level of 30, criminal history category of IV, with a guideline range of incarceration of 135-168 months to be followed by 7 years of incarceration. ECF 108, ¶ 142. Although making a different sentencing recommendation, the United States does not have any objections to the PSIR.

II. Departures

The United States seeks an upward departure in this matter or, alternatively, an upward variance pursuant to 18 U.S.C. § 3553(a). The Guidelines are the starting point and the initial benchmark for the sentencing process. *Kimbrough v. United States*, 128 S. Ct. 558 (2007). The Court "take[s] into account the totality of the circumstances" to determine whether a sentence is reasonable. *Gall v. United States*, 128 S. Ct. 586, 597 (2007). The United States submits that a sentence of 168 months plus 84 months, for a total of 252 months, which would be the top of the Guideline range sentence as set forth in the draft PSIR, is not sufficient to address

the totality of the circumstances of Defendant's crimes. The Guidelines inadequately account for the multiple assaults, particularly the assault of the victim performed after the carjacking was completed, by giving no weight to the Assault Resulting in Serious Bodily Injury charge. *See* ECF 108, ¶ 43.

Alternatively to a departure, an upward variance to a sentence of life imprisonment is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a). Should it decide that a life sentence is too great a variance or departure, the Court should exercise its discretion and sentence Defendant to consecutive sentences for the Carjacking and for the Assault Resulting Serious Bodily Injury, both at the high end of the guideline range for those crimes. That sentence would reflect the fact that, although occurring on the same day, those crimes were separated by time and place. This suggested sentence would be a one of 168 months as to Count 1, 84 months consecutive as to Count 2, and 57 months consecutive as to Count 4 for a total of 309 months incarceration followed by five years of supervised release. Such a consecutive sentence would better reflect Defendant's crimes and her role in the prolonged and extraordinary nature of the assaults upon the victim.

After her boyfriend and co-Defendant, Miller, pointed the victim's .308 rifle at the victim's (A.S.C.'s) face and pulled the trigger in an attempt to kill her, Defendant searched for cartridges for the rifle and, after she and Miller were unable to find any in the victim's truck, told Miller she wanted to take the victim back to

his place and slit her throat when she was asked by him what to do with the victim. Defendant not only participated in beating the victim, she handed Miller the rifle before he tried to kill A.S.C. and then encouraged and participated in the carjacking by holding A.S.C. in her own truck by her hair as Miller drove them back to his residence. Defendant's actions in giving the rifle to Miller and then searching for ammunition after he was unsuccessful in killing A.S.C. justify an upward departure pursuant to U.S.S.G. § 5K2.6 (Weapons and Dangerous Instrumentalities). Not dissuaded by Miller's failure to kill A.S.C., Defendant encouraged him to kill her, participated in the carjacking, and then helped Miller further assault the victim once they reached his residence at 17500 Fort Road on the Yakama Nation. Defendant's persistence in seeking to kill A.S.C. and actions in restraining and transporting her to accomplish that goal merit upward departures pursuant to U.S.S.G. §§ 5K2.4 (Unlawful Restraint) and 5K2.8 (Extreme Conduct). In sum, Defendant's actions merit a sentence with an upward departure to sentence of life imprisonment. But for A.S.C.'s practice of ensuring that she did not keep a loaded rifle in her vehicle and her flight from Defendant's residence, she would have been killed by Defendant and her boyfriend.

    The Guideline provision for brandishing a firearm during and in relation to a crime of violence is the statutory mandatory minimum. ECF 108, ¶¶ 36, 142. Defendant's offense levels for Counts 1, Carjacking, and 8, Assault Resulting in Serious Bodily Injury, are both increased by, respectively, four and five levels based

upon the fact the victim suffered serious bodily injury. *Id.* at ¶¶ 29, 38. However, the manner in which Miller and Defendant used the firearm in this case, in which A.S.C. testified that, after Defendant handed Miller the rifle, he pointed the rifle at A.S.C.'s face and pulled the trigger, then, when it turned out the rifle was unloaded asked Defendant to find cartridges, which she attempted to do, is more significant than many instances of brandishing, which can be accomplished if a defendant merely "displayed all or part of the firearm, or otherwise made the presence of the firearm known to another person, to intimidate that person, regardless of whether the firearm was directly visible to that person." *See* Model Crim. Jury Instr. 9th Cir. 14.22 (2023). The more significant use of a firearm by Defendant and by Miller (with Defendant's aid) merits a sentence above the guideline range of the statutory mandatory minimum.

    A sentence outside the Guidelines carries no presumption of unreasonableness. *Irizarry v. United States*, 553 U.S. 708, 714 (2008). After *Booker*, upon appellate review, "the scheme of downward and upward 'departures' [is] essentially replaced by the requirement that judges impose a 'reasonable' sentence." *United States v. Ellis*, 641 F.3d 411, 421 (9th Cir. 2011). A reasonable sentence under the factors applying to this case under 18 U.S.C. §3553(a) is one of life imprisonment or, alternatively, 309 months imprisonment followed by five years of supervised release.

    III.    <u>Sentencing Factors Under 18 U.S.C. §3553(a)</u>

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

A district court may vary upward based on factors already incorporated into the Guideline calculations. *United States v. Christensen*, 732 F.3d 1094, 1101 (9th Cir. 2013). As the Court heard at trial, on December 28, 2021, Defendant, her boyfriend and co-Defendant Sundron Larsell Miller, and the victim, A.S.C., went for a ride in the victim's truck. The uncontradicted testimony of A.S.C. was that Defendant and Miller got into an argument after smoking "blues" and that, when she attempted to intervene, they turned on her. Miller dragged A.S.C. out of the driver's seat of her truck and began beat her with fists and feet. Defendant joined in. Miller told Defendant to get a gun and she handed him a BB gun, which he used to strike A.S.C.. He then told Defendant to get the real gun, and she retrieved A.S.C.'s Savage .308 rifle from the truck and gave it to him. He pointed the rifle and A.S.C.'s face and pulled the trigger. A.S.C. heard the "click" of the empty rifle going off. Because the rifle was unloaded, Defendant and Miller looked for, but were unable to find cartridges. When Miller asked Defendant what to do with A.S.C., she said she wanted to take A.S.C. back to his residence to kill her. Miller forced A.S.C. into the passenger side of her own vehicle and Defendant held her in the vehicle by her hair from a position in the back seat while Miller drove the truck. At trial, images of bloodstains and hanks of hair found in the truck were introduced into evidence. Upon arriving at Miller's residence, they dragged A.S.C. out of the truck and further beat her, using the

BB gun and the rifle again. At one point, Miller placed the barrel of A.S.C.'s .308 rifle in her mouth and then struck the butt stock of the rifle, driving it into her mouth and breaking a tooth as well as causing other injuries. Defendant and Miller then dragged A.S.C. up onto a porch of the residence and told her to stay put while they sought entry from another door. A.S.C. fled and ran to a nearby dwelling for help.



At trial, both Leanda Jim, Miller's aunt, and Yakama Nation Police Department Officer Gudino testified that A.S.C. looked worse when they first saw her than she did as she appeared in the hospital, as shown here in Government's Exhibit 16, which was also admitted into evidence at trial. When law enforcement arrived at Miller's residence, they found the bent BB gun from A.S.C.'s truck, the broken stock of A.S.C.'s Savage .308 rifle, and A.S.C.'s truck as well as blood and marks in the snow from the assault. A.S.C. identified the BB gun at trial, in part by her son's name written on it.

As to Defendant's history and characteristics, she is twenty-seven years old and has four children with Miller. ECF 108, ¶¶ 87, 91. She has a criminal history of violating court orders and of violent assaults, including convictions for violating a no contact/protection order twice in 2018 and again in 2019. ECF 108, ¶¶ 57, 65, 69. She was convicted of fourth degree assault for striking another inmate in jail in 2019. *Id.* at ¶¶ 73-75. Defendant reports regular alcohol and narcotics use and appears to have

been unemployed for approximately five years. *Id.* at ¶¶ 96-100, 104. She has a GED. *Id.* at ¶ 103.

Defendant, directly and through counsel, asserts that she does not recall anything leading up to her arrest. *Id.* at ¶¶ 93, 100. Despite her claimed lack of knowledge of her actions, she fled the scene of the crime and then avoided arrest and remained at large for two months after the issuance of a warrant for her arrest. *See* ECF 44, Arrest Warrant for Paula Eulojia Cantu-Lopez returned executed. According to her bail report, she used her sister's name at the time of her arrest. ECF 33, p. 1. Defendant's flight from law enforcement and from the scene of her assault upon A.S.C. appears inconsistent with a lack of memory or knowledge of wrongdoing.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

A.S.C. described suffering extreme pain due to the injuries inflicted by Defendant and Miller and also testified that she moved out of state following the attack, even though she is a member of the Yakama Nation. Defendant participated in beating A.S.C., in the attempts to kill her, and encouraged Miller to kill her. It is hard to conceive of a more serious offense than a prolonged assault in furtherance of the ultimate goal of killing a woman. A life sentence is appropriate to reflect the seriousness of the offense and to promote just punishment. A.S.C.'s self-rescue after being left beaten and bleeding on a porch in the snow should not inure to this Defendant's benefit.

### 3. The need for the sentence imposed to afford adequate deterrence to criminal conduct.

Defendant was an absconder from state supervision for felony violation of a protective order, domestic violence, at the time of this offense. ECF 108, ¶¶ 69-72. The United States submits that even a high-end Guideline sentence of 252 months is unlikely to deter Defendant from further crimes upon release given her history of violating court orders. S*ee Gall*, 552 U.S. at 52 ("[E]very case [i]s a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)). A sentence of life imprisonment would further the goal of general deterrence, addressing the seriousness of an attempted killing on the Yakama Nation.

### 4. The need for the sentence imposed to protect the public from further crimes of Defendant.

Uncontradicted testimony at trial established that Miller and A.S.C. had known each other since childhood and that the attack upon her was unprovoked. Defendant and Miller turned what appeared to be a cordial outing provided by a friend into an afternoon and evening of extended, horrific violence. The contrast between image taken by A.S.C. of Defendant and her partner, Miller, in the afternoon before the assaults, as shown in United States Exhibit 8, admitted at trial and appearing here and the image of A.S.C. in the hospital, as shown above, is



GOV'T SENT. MEMO.                                    9

stark. The Court cannot expect to protect the public from further violence by Defendant with any sentence short of life in prison if she is capable of such an unprovoked attack.

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

A sentence of life imprisonment would provide Defendant with effective correctional treatment, including the Residential Drug and Alcohol Program (RDAP) offered by the Bureau of Prisons (BOP). Further, she would receive medical care for the duration of that sentence. Alternatively, a sentence of 309 months imprisonment followed by five years of supervised release would afford her with adequate correctional treatment.

IV.

GOVERNMENT'S SENTENCING RECOMMENDATION

The government recommends that the Court impose a sentence of incarceration for life, no criminal fine, the mandatory $300 Special Penalty Assessment, and mandatory restitution. At the time of the submission of this document, no restitution requests have been received.

DATED this 31st day of October, 2023.

VANESSA R. WALDREF
United States Attorney

s/Michael D. Murphy
MICHAEL D. MURPHY
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, and a copy was emailed to the counsel of record in this case.

s/ Michael D. Murphy
Michael D. Murphy
Assistant United States Attorney
United States Attorney's Office
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
(509) 454-4425
Fax: (509) 249-3297